ELLIS *et al. v.* TILLMAN *et al.*

[88 South. 281, No. 21769.]

HIGHWAYS. *Commissioners have no authority to let contracts until engineer's survey and estimate adopted and ratified.*

The provisions of section 5, chapter 176, Laws of 1914 (Hemingway's Code, section 7162), providing for the appointment of road commissioners and requiring them to employ a competent engineer to survey and lay out such road or roads as should be selected by such commissioners to be constructed and maintained, and making it the duty of such engineer to make an estimate of the cost of constructing and maintaining such highway for each separate mile covered by such survey, and to report the survey and estimate to the commissioners before contracts are let for the construction, or the construction and maintenance of such roads, are mandatory, and until such surveys and estimate have been filed and adopted by the commissioners and ratified by the board of supervisors, the commissioners are without authority to let contracts for the construction of such roads.

APPEAL from chancery court of Copiah county.

HON. V. J. STRICKER, Chancellor.

Suit by E. B. Tillman and others against I. N. Ellis, Sr., and others, for an injunction. From a decree overruling a motion to dissolve a preliminary injunction, respondents appeal. Affirmed.

*Miller & Hendricks,* and *Wilson & Henley,* for appellants.

We contend: (1) This feature of section 7162 is directory and not mandatory, and therefore a failure to observe the same would not invalidate the contract. (2) If mandatory there has been a substantial compliance therewith, which is sufficient.

In considering both of these contentions it is very important that we keep the purpose of this part of the statute ever before us, and for this reason we intend first to discuss its object.

"Whether a particular statute is mandatory or directory does not depend upon its form, but upon the intention of the legislature, to be ascertained from a consideration of the entire act, its nature, its object and the consequences that would result in construing it one way or the other." 36 Cyc. 1157.

If a fair interpretation of this statute shows that its object was to prevent the road authorities from squandering the people's money it should be construed as mandatory; but should it appear to be for the guidance of the highway officer, and to secure a uniform method of procedure in letting these contracts throughout the state, and providing a business-like method for the same it should most certainly be construed as directory. If directory a failure to observe the same will not invalidate the contract of the district with Bass for the construction of these roads. See 36 Cyc. 1157.

The only question in this entire record is the necessity *vel non* of a technical compliance with this feature of the statute; is a prerequisite to entering into a valid and binding contract.

We cannot agree with the court below that the purpose of this estimate was to determine whether or not the work should be undertaken. The qualified electors had already settled this question at the ballot boxes when they voted in favor of issuing bonds for this work.

Nor was it the purpose of this requirement to determine whether only a part of the work should be undertaken, and whether the same expenditure might be more judiciously made upon another road. It is sufficient to call the court's attention to the fact that under the system provided for, such estimates were to be made only upon roads which had already been selected and designated by the authorities.

It does not appear that the purpose of this work was to furnish information which would assist the highway officers in determining whether or not the bids were fair and competitive. For as the work is let out on the unit basis, and the bids of the different contracts not only vary as a whole but especially as to the different kinds of work, it would be impossible to determine which is the cheapest and best bid without knowing the approximate amounts of the different kinds of work that would be necessary. For instance, a contractor might have the lowest bid on three items, and his bid not be the cheapest when figured as a whole.

When we consider the disastrous consequence should the court place the construction on this statute contended for by appellee, it is manifest that the legislature must have intended for it to be directory. If the contract does not bind the district and the county, it certainly does not bind the contractor. Could it be thinkable that our legislature intended to prescribe a schedule of acts which all highway officers must literally and technically fulfill before a valid contract can be made? If this be true any contractor who sees that he is losing money would only have to look through the list and find an "i" undotted here and a "t" uncrossed there and inform the county authorities that they had no contract. It was to avoid such situation that the legislature specifically provided that all acts and proceedings in assessing taxes were governed by directory statutes.

*M. S. McNeil,* for appellee.

By reference to the data furnished by the engineer approved by the commissioners and adopted by the board of supervisors, it will be seen: First: That the road was never laid out and surveyed, as contemplated by the statute. Second: That no estimate was made of the cost of construction. Third: That no estimate was made showing the probable cost of maintaining said road, Fourth: There is no pretense that the data furnished by the engineers was made upon each separate mile.

It is insisted that if the commissioners could legally dispense with these requirements of the statute, then it would be in their discretion to construct gravel roads without any survey whatever.

The safest rule we are able to find defining the duties of a court in the construction of statutes and in determining whether or not the provisions of a statute are mandatory or directory is found in the case of *Koch, et al.* v. *Bridges, et al.,* 45 Miss. 258.

*Hope* v. *Flentge,* 140 Mo. 390, 41 S. W. 1002, 47 L. R. A. 805, holding that in all cases where the authority of the courts to proceed is conferred by statute, and where the manner of obtaining jurisdiction is prescribed by statute the mode of proceeding is mandatory, and must be strictly complied with, or the proceeding will be utterly void. Spencer's appeal, '78 Conn. 301, 61 Atl. 1010; *Eccles Lumber Co.* v. *Martin,* 31 Utah, 241, 87 Pac. 713; *State* v. *Farney,* 36 Neb. 537, 54 N. W. 862; *Corliss* v. *Corliss,* 8 Vt. 373, holding that where a statute authorizing a division of real estate requires notice to be given the requirement of such preliminary notice is intended to secure to those affected an opportunity to be heard, and cannot be treated as merely directory. *Rex* v. *Cooke,* Cow. 25, 98 Eng. Reprint, 948; *Toronto* v. *Caston,* 30 Can. Sup. Ct. 390 (affirming 26 Ont. App. 459 (affirming 30 Ont. 16); *Trenton* v. *Dyer,* 24 Can. Sup. Ct. 474 (affirming 21 Ont. App. 432); *Love* v. *Webster,* 26 Ont. 453; *Mckay* v. *Ferguson,* 26

Grant Ch. (U. C.) 569 (affirming 22 U. C. Q. B., 578); *Hurford* v. *Omaha,* 4 Neb. 336, 351; *State* v. *Barry,* 14 N. D. 316, 103 N. W. 637; *Tarver* v. *Tallapoosa County,* 17 Ala. 527; *Hugg* v. *Camden,* 39 N. J. L. 602; *People* v. *Morre,* 78 N. Y. App. Div. 28, 79 N. Y. Suppl. 7; *State* v. *Franklin County,* 35 Ohio St. 458; *State* v. *Lean,* 9 Wis. 279; *Young* v. *Leamington,* 8 App. Cas. 517, 52 L. J. Q. B. 713, 49 L. T. Rep. (N. S.) 1, 301 Wkly. Rep. 500; *Hunt* v. *Wimbledon Local Bd.,* 4 C. P. D. 48, L. J. C. P. 207; 40 L. T. Rep. (N. S.) 115, 27 Wkly. Rep. 123; *Frend* v. *Dennett,* 4 C. B. (N. S.) 576, 4 Jur. (N. S.) 897, 27 L. J. C. O. 314, 93 E. C. L. 576; See 44 Cent. Dig. Tit. Statutes, sec. 309; *Phelps* v. *Lodge,* 60 Kan. 122, 55 Pac. 840; *Shawnee County* v. *Carter,* 2 Kan. 115; *Koch* v. *Bridges,* 45 Miss. 247; *People* v. *Buffalo,* 140 N. Y. 300, 35 N. E. 485, 37 Am. St. Rep. 563, (affirming 2 Misc. 7, 21 N. Y. Suppl. 601); *People* v. *New York,* 3 Misc. (N. Y.) 131, 23 N. W. 505; *Binder* v. *Langhorst,* 234 Ill. 583, 95 N. E. 400; *Phelps* v. *Hawley,* 52 N. Y. 23; *People* v. *Otsego County,* 51 N. Y. 401; *McConnell* v. *Allen,* 120 N. Y. App. Div. 548, 105 N Y. Suppl. 16, reversed on other grounds in 193 N. Y. 319. 95 N. E. 1082; *People* v. *Herkimer County,* 56 Barb. 452; *People* v. *New York,* 11 Abb. Pr. 114; *State* v. *Barry,* 14 N. D. 316, 103 N. W. 637; *Carbaugh* v. *Sanders,* 13 Pa. Super. Ct. 361; *Ralston* v. *Crittenden,* 13 Fed. 508; 3 McCrary, 344; See 44 Cent. Dig. Tit. Statutes, sec. 308.

W. H. COOK, J., delivered the opinion of the court.

E. B. Tillman and other taxpayers of district number 1 of Copiah county exhibited their bill of complaint in the chancery court seeking to enjoin the board of supervisors, the road commissioners of the district, and J. M. Bass, road contractor, from proceeding further with the construction of a certain short link of gravel road known as the Pell road. A preliminary injunction was issued, and from a decree overruling a motion to dissolve this injunction, this appeal was prosecuted.

That portion of the bill of complaint which is material
to an understanding of the question presented for decision,
in substance, charges that, under the orders of the board
of supervisors, an election was held for the purpose of au-
thorizing the issuance of bonds to raise funds to construct
and maintain gravel roads in district number 1 of the
county, and as a result of such election bonds were issued
and funds provided for that purpose; that under the pro-
visions of chapter 176, Laws of 1914 (Hemingway's Code,
section 7162), commissioners were duly appointed and
qualified; that it was the duty of such road commissioners,
subject to the approval of the board of supervisors, to de-
termine what road or roads should be constructed, or con-
structed and maintained, or maintained in such road dis-
trict; that it was the duty of such commissioners to let
all contracts for the construction, or for the construction
and maintenance, or for the maintenance of such roads in
the manner provided by law for letting contracts for pub-
lic work by the board of supervisors; that it was the duty
of such commissioners to employ a competent engineer to
survey and lay out such road or roads as should be selected
by the commissioners; that it was the duty of such engi-
neer to make an estimate of the cost of constructing such
highway for each mile covered by such survey, and to re-
port such survey and estimate to the commissioners before
contracts were let for the construction, or the construction
and maintenance, of such roads; that it was the duty of
such road commissioners before letting contracts to report
such survey and estimate to the board of supervisors; that
it was the duty of the board of supervisors to order the
clerk of the board to file the survey and estimate among
the records of the office and spread the same on the min-
utes of the board, and make an order adopting such sur-
vey and estimate so reported and adopted by the commis-
sioners; that until such survey and estimate were ratified
by the board of supervisors, the commissioners were with-
out authority to let contracts for the construction of such
roads; that the commissioners failed to comply with these

statutory requirements, and that they were undertaking, in violation of law, to construct and maintain the gravel road known as the Pell road. The bill further charges that no survey of such road had been approved by the board of supervisors; that no estimate of the cost of constructing and maintaining said road for each separate mile had been made and filed with the board of supervisors; that the road commissioners had entered into some sort of private understanding or agreement with the defendant, Bass, to grade and build the road, and that they had failed and refused to submit to the board of supervisors any of their proceedings, to be ratified as provided by chapter 176, Laws of 1914.

It appears from the record made upon the hearing of the motion to dissolve the injunction that, at the time of the filing of the original bill in this cause and the issuance of the injunction, the only record of the road in controversy which appeared on the minutes of the board of supervisors was an order adopting the Pell road as one of the roads to be constructed out of the proceeds of the bond issue, and the following agreement was made a part of the record:

"It is agreed by counsel representing complainant and defendant that the minute book of the board of supervisors fails to show, up to the time of the filing of the original bill in this case, any estimate of the cost of construction of the road in controversy made by the engineers; that the minutes of said board fail to show any order approving any estimate made by the engineers, and fails to show that any contract was entered into between the commissioners of district No. 1 and J. M. Bass, contractor, for the construction of the road in controversy. That no action was taken by the board whatever, so far as the minutes show, up to the time of filing this bill, with reference to said road, except an order which appears upon the minutes on Minute Book M, p. 44, approving the selection of this particular road to be graded and graveled."

After the filing of the bill of complaint, and before appellants filed their answers, the board of supervisors entered an order *nunc pro tunc* amending its minutes, which order embodied a survey and estimate made by an engineer. This survey, as approved by the commissioners and ratified by the board of supervisors, being as follows:

"Pell Road: Length, 1½ miles. Clearing and grubbing, 1 a. Culverts, 12", 40 ft. Culverts, 18", 40 ft. Culverts, 24", 40 ft. Grading, 3,500 cu. yds. Gravel, 1,887 cu. yds."

The question presented for decision here calls for the construction of section 5, chapter 176, Laws of 1914 (Hemingway's Code, section 7162) ; that part of the section here involved being as follows:

"It shall be the duty of such commissioners, subject to the approval of the board of supervisors, to determine and fix what road or roads shall be constructed or constructed and maintained or maintained in such district or districts out of the proceeds of the sale of such bonds and the levy of such taxes; and it shall be their duty to let all contracts for the construction, or for the construction and maintenance or for the maintenance of such roads in the manner now provided by law for the letting of contracts for public work by the board of supervisors; and it shall be their duty to employ a competent engineer to survey and lay out such road or roads in such district or districts, as they shall determine upon, whose duty it shall be to make an estimate of the cost of constructing and maintaining such highway or highways for each separate mile covered by such survey, and report such survey and estimate to said commissioners before contracts are let for the construction or for the construction and maintenance of such highway or highways; which survey and estimate said commissioners shall have the power to adopt or reject and in the latter event to have another made; and when adopted, it shall be their duty to report the same to the board of supervisors, whose duty it shall be to order the clerk of said board to file the same among the record of

the office, and spread the same on the minutes of the board
and make an order adopting such survey, and estimate so
reported and adopted by such commissioners; all of which
acts of said commissioners to be subject to the ratification
or rejection by the board of supervisors."

It is the contention of appellants, first, that this sec-
tion is merely directory, and, second, that if the section is
mandatory, only a substantial compliance with the provi-
sions thereof is required, and that the survey and estimate
filed with the board, and which are herein set out in full,
were a substantial compliance with the requirements of the
section.

We cannot agree with the contention of appellants that
the provisions of this section are merely directory. In
chapter 176, Laws of 1914, the legislature has provided an
elaborate and detailed scheme for the construction and
maintenance of public roads by means of special taxation,
and has minutely defined the duties of the various public
officers who are charged with the construction and main-
tenance of these highways and the expenditure of the pub-
lic funds required for that purpose. Section 5 of this act
(Hemingway's Code, section 7162), provides for the ap-
pointment of three commissioners who shall have the man-
agement and supervision of the construction and main-
tenance of the roads constructed under the provisions of
the act, and prescribes in detail the duties which shall be
performed by these commissioners. Under the provisions
of this section it is made the duty of the commissioners to
determine and fix what road or roads shall be constructed,
or constructed and maintained, or maintained, in the road
district, out of the proceeds of the sale of bonds or the levy
of taxes, and it is made their duty to employ a competent
engineer to survey and lay out such road or roads as shall
be selected by the commissioners, and the engineer so
chosen is required to make an estimate of the cost of con-
structing and maintaining such highway for each sepa-
rate mile covered by such survey. When this survey and

estimate has been filed with the commissioners, they have the power to adopt or reject it, and in the latter event to have another one made, and all the acts of the commissioners must be ratified by the board of supervisors.

The language of this section is plain, positive, and unambiguous, and we cannot rightfully exercise the power of frittering away the mandatory provisions thereof by calling them directory. It is urged that this survey and estimate are unnecessary and can serve no useful purpose, but we cannot say that the plain and positive requirements of this statute are unnecessary. In fact, it is easy to assign very good reasons for this requirement, and we think it was intended to serve a very useful purpose, but in any event, as well said by the learned chancellor in his opinion filed in this cause—

"Whatever the purpose may be of the requirement that the engineer lay out and survey the roads and then make an estimate of the cost of construction and maintenance for each separate mile, it is declared to be his duty to so do, and to report the same to the commissioners before the contracts are let for such construction, or for the construction and maintenance of such highways."

We have seen no better expression of the rule applicable in determining whether the provisions of a statute are directory or mandatory than that found in *Koch* v. *Bridges,* 45 Miss. 258, 260, where Chief Justice PEYTON used language which we quote to approve and adopt, as follows:

"Statutory requisitions are deemed directory only when they relate to some immaterial matter where a compliance is matter of convenience rather than of substance."

"This mode of getting rid of a statutory provision by calling it directory is not only unsatisfactory, on account of the vagueness of the rule itself, but it is the exercise of a dispensing power by the courts, which approaches so near legislative discretion that it ought to be resorted to with reluctance, only in extraordinary cases, where great public mischief would otherwise ensue, or important private interests demand the application of the rule. There is

no more propriety in dispensing with one positive require-
ment than another; a whole statute may be thus dispensed
with when in the way of the caprice or will of a judge. And
besides, it vests a discretionary power in the ministerial
officers of the law, which is dangerous to private rights;
and the public inconvenience, occasioned by the want of
uniformity in the mode of exercising a power, is a strong
reason for bridling this discretion. It is dangerous to at-
tempt to be wiser than the law, and when its requirements
are plain and positive, the courts are not called upon to
give reasons why it was enacted. A judge should rarely
take upon himself to say that what the legislature has
required is unnecessary. He may not see the necessity of
it, still it is not safe to assume that the legislature did not
have a reason for it; perhaps it only aimed at certainty
and uniformity. In that case, the judge cannot interfere
to defeat that object, however puerile it may appear. It
is admitted that there are cases where the requirements
may be deemed directory. But it may be safely affirmed
that it can never be where the act, or the omission of it,
can, by any possibility work advantage or injury, how-
ever slight, to any one affected by it. In such case, the
requirement of the statute can never be dispensed with.

"The legislative body is the supreme power of the state,
and, whenever it acts within the pale of its constitutional
authority, the judiciary is bound by it, and it is not com-
petent for the latter tribunal to dispense with a regulation
or requisition plainly prescribed by the former, or, to say
that this mode, that, or the other, is as good as the one
dictated by the legislature; for this, in fact, would be
placing the judiciary above the legislature, by enabling
the former to nullify the acts of the latter, or to supersede
them by substitutes to which the legislature might not have
assented had the proposition been submitted to it. The
intention of the legislature should control, absolutely, the
action of the judiciary. Where that intention is clearly
ascertained, the courts have no other duty to perform than
to execute the legislative will, without any regard to their

own views as to the wisdom or justice of the particular en-
actment.   No principle is more firmly established, or rests
on more secure foundations, than the rule which declares
when a law is plain and unambiguous, whether it be ex-
pressed in general or limited terms, that the legislature
shall be intended to mean what they have plainly ex-
pressed, and, consequently, no room is left for construc-
tion.   And courts should adhere to the cardinal rule that
the judicial functions are always best discharged by an
honest and earnest desire to ascertain and carry into ef-
fect the intention of the lawmaking body."

If the foregoing principles, as announced by Chief Jus-
tice PEYTON, are applied to the statute under review, it is
manifest that the provisions of this section must be held
to be mandatory, and it is apparent that the filing of this
survey and estimate is an antecedent or prerequisite con-
dition to the exercise of the power of contracting for the
construction, or the construction and maintenance of such
highways.

We see no basis for the fears expressed by counsel for
appellants that disastrous consequences will follow a con-
struction of this statute, which requires highway officials
to follow the plain and positive requirements of the stat-
ute, rather than some plan which they may deem more ex-
peditious or convenient, but, on the contrary, in the ex-
penditure of these large sums of public money, and in pub-
lic improvements of such vast importance to the present
and future generations, the only safe chart is found in a
strict compliance with the legislative enactments authoriz-
ing such improvements.

It is clear from an examination of the survey as herein
set out that there was no compliance with the provisions
of the statute.   If it should be conceded that the survey
was sufficient, there is still no estimate of the cost of con-
struction for each separate mile thereof, or the cost of
maintenance of the road in question, and, since the filing
and adoption of this survey and estimate were necessary

· prerequisites to the letting of the contract for the construction of the road, it follows that the decree of the lower court will be affirmed.

*Affirmed.*