AMITE COUNTY *v.* MILLS.*

[102 So. 465. No. 23750.]

(In Banc. Jan. 12, 1925.)

1. HIGHWAYS. *Road construction contract held void because of engineer's failure to make estimate of cost and report same, as required by statute.*

   Under section 5, chapter 176, Laws of 1914 (section 7162, Hemingway's Code), it is necessary that an engineer be employed to make an estimate of the cost of constructing and maintaining the highway or highways to be improved, and that such estimate embrace the work to be done and the approximate cost thereof, and that this survey and estimate be approved by the road commissioners and by the board of supervisors, and be entered upon the minutes of the board of supervisors, before a valid contract can be made for such work, and where there is a failure to comply with the terms of the statute a contract made under said law is void, and the board of supervisors is not liable for the work done or the improvements made.

2. HIGHWAYS. *County held not liable on quantum meruit basis for road construction work done under void contract.*

   A county is not liable on a *quantum meruit* basis for the construction of roads authorized under chapter 145, Laws of 1912, as

amended by chapter 176, Laws of 1914 (Hemingway's Code, sections 7158 to 7178, inclusive), for work performed under a contract made without having the preliminary survey and estimate made by an engineer. A county can only be bound by a contract entered upon the minutes of the board of supervisors showing a compliance with the mandatory provisions of such chapters. *Smith County* v. *Mangum*, 127 Miss. 192, 89 So. 913, cited.

ANDERSON, J., dissenting and HOLDEN, J., dissenting orally.

### ON SUGGESTION OF ERROR.

### (Feb. 2, 1925.)

APPEAL AND ERROR. *After sustaining or overruling suggestion of error, no further suggestion of error can be filed.*

After a suggestion that the supreme court erred in rendering a judgment either of affirmance or reversal has been sustained, or overruled, no further suggestion of error can be filed in that cause by any of the parties thereto.

---

*Headnotes 1. Highways, 29 C. J., section 347; 2. Highways, 29 C. J., section 349 (1926 Anno).

*Headnote 1. Appeal and Error, 4 C. J., section 2477.

APPEAL from chancery court of Amite county.
HON. R. W. CUTRER, Chancellor.

Action by W. P. Mills against Amite county. Judgment for plaintiff, and defendant appeals. Reversed and judgment rendered.

*George Butler* and *C. T. Gordon,* for appellant.

The contract in this case is void, and Mills cannot sue upon it, because the engineer employed by the commission to survey and lay out the roads did not make an estimate of the cost of constructing and maintaining the highways for each separate mile covered by the survey and did not report such estimate to the commissioners, and the commissioners did not adopt such survey or estimates and did not report the same to the supervisors and spread same upon the minutes of the board and the board did not make an order adopting such survey and

estimates as provided by section 5, chapter 176, Laws of 1914, under which the county was operating in connection with these roads. Their failure in this regard renders this contract absolutely null and void. This point was expressly adjudicated in the case of *Ellis* v. *Tillman,* 125 Miss. 678.

The wisdom of this provision in the statute, and we might say its absolute necessity, is clearly demonstrated in this case. The record shows that Mills has been paid for approximately seven thousand cubic yards of grading done on the Gloster road in excess of the amount the cross section notes showed was required to grade that road, and he is making a claim for an additional twenty-eight thousand six hundred ten cubic yards for maintaining the Gloster road, or a total of thirty-five thousand six hundred ten cubic yards on the Gloster road, more than the cross section notes showed was required to grade that road.

Moreover, complainant is claiming approximately fourteen thousand cubic yards more for grading on the McComb road than the cross section notes and the extras allowed by Stowell showed, and eight thousand and fifty-seven cubic yards additional for maintenance of the road bed on the McComb road.

And in this connection it is perhaps well to point out that the cross section notes on the Gloster road were lost prior to the trial; that Mills was actually allowed seven hundred cubic yards more on the Gloster road than the cross section notes showed it required to grade that road, and approximately twelve thousand cubic yards more than Kramer's estimate showed. Whereas, in the case of the McComb road, Kramer's estimate showed an estimated quantity of thirty-one thousand six hundred cubic yards to grade that road as far as it was graded. The cross section notes showed that the actual grading to complete the road as far as it was completed was twenty-eight thousand six hundred five cubic yards, and the master found that the total yardage required to com-

plete the road as it was finally completed was only thirty-three thousand, four hundred eighty-five cubic yards, which included four thousand eight hundred eighty cubic yards extra allowed under Stowell, or about two thousand more than Kramer's original estimate.

The very purpose of this statute was to enable the taxpayers represented by the board of supervisors to know what it cost to construct each mile of each road proposed to be built, so that they might exercise a judicious discretion in determining whether or not they would undertake the work.

The courts of this state have long since settled the proposition that a county cannot be bound except in the manner provided 'for by the statute, and by an order entered upon its minutes. In *Holmes Co.* v. *Burton Construction Co.,* 267 Fed. 769, it is said: "We think it can be stated as a general proposition of law, that a public body can only be bound to the extent and within the limitations which its regularly constituted authorities have bound it. Text books and cases are uniform on that point, and it needs no citation of authorities to support the rule that no contractual rights can spring against a municipality except in strict accordance with the law, and the corollary is equally well established, that a municipality must act by order entered on its minutes with reference to its contract, and, having contracted, no additional burden or obligation can be imposed upon it except by an order duly entered upon the minutes of the board."

In *Smith Co.* v. *Mangum,* 89 So. 913, it is said: "Section 361, Code of 1906; Section 3734, Hemingway's Code, provides how contracts of this character shall be made by the board. It has been repeatedly held by this court that the board of supervisors can only act and speak through its minutes; that is, through orders entered upon its minutes."

In the case of *Crump* v. *Board of Supervisors of Colfax Co.,* 52 Miss. 107, it is stated that: "It can only enter

138 Miss.—15.

into an express contract by its assent thereto, in some form or other, entered on its minutes.''

Again, in the case of *Board of Supervisors of Benton Co.* v. *Patrick, et al.,* 54 Miss. 240, the court upon this question cites with approval the *Crump case, supra,* and adds the following: ''If the contractors or the commissioners thought the alterations necessary, authority to make them ought to have been obtained from the board, and its consent manifested by its record.''

In *Bridges & Hill* v. *Board of Supervisors of Clay Co.,* 58 Miss. 817, speaking of a similar contract, it is there held that: ''Boards of supervisors bind counties only when acting within the range of their authority, and in the mode and manner pointed out by the statutes. Their contracts are evidenced by the entries on their minutes, and can no more be varied by proof that the members failed to speak, though they knew that those with whom they were dealing misunderstood' the purport of what they were doing, than they can be created and established by silence alone. It takes an affirmative act of the board within the scope of its authority evidenced by an entry on its minutes to bind the county by a contract, and when thus made, the contract is not to be varied, any more than created, by the mere silence of a portion of the board and the mistaken assertions of others.''

In *Dixon* v. *Greene Co.,* 76 Miss. 794, 25 So. 665, the court says that: ''The only express contract made by the board was to be found in the order on its minutes, and the plans and specifications made a part thereof by reference.''

In discussing the same question the court in *Groton Co.* v. *Warren County,* 80 Miss. 214, 31 So. 711, says that: ''The board of supervisors may by a new contract, or an amendment of its original contract, or by a ratification (all of which must be by acts of the board in open session, spread upon its minutes) bind the county to pay in each of the cases named. And parties contract-

ing with the counties are charged with the knowledge of this statute.''

This doctrine is reiterated in the case of *Marion Co.* v. *Foxworth,* 83 Miss. 677, 36 So. 36, in the following language: ''Such contracts, like all other contracts made by boards of supervisors, must be evidenced by orders duly entered on their minutes, or by papers in such orders referred to and made a part thereof.''

To the same effect are *Gilchrist-Fordney Co.* v. *Keyes,* 113 Miss. 742, 74 So. 619, and *Lamar Co.* v. *Tally & Mayson,* 116 Miss. 588, 77 So. 299. Under these authorities it is manifest that the board of supervisors of a county can only enter into an express contract by an order spread upon its minutes, and that there can be no such thing as a verbal or oral order of this board.

The two sections of the Code relating to contracts of this character are sections 361 and 369, Code of 1906; sections 3734 and 3742, Hemingway's Code. The first provides how contracts for public work are made; the second, that contracts of this kind shall not be made in vacation, except in certain cases therein stated. This latter section was section 344, Code of 1892. In the case of *Groton Co.* v. *Warren County, supra,* the appellant was attempting to hold the county liable on a *quantum meruit* basis. In holding that there could be no such recovery it is stated in the opinion that such liability on an implied contract will not attach where an express contract only is contemplated by statute, citing authorities. Again it is said that: ''It is plain from this that a county cannot, as to the subject-matter covered by section 344, be bound by an implied contract. The very purpose of this statute was to cut off entirely any fraudulent claims for extra work done and materials furnished, and it limits the board of supervisors to express contracts in respect to the subject-matter embraced in the statute, made in the mode pointed out.''

This reason with equal force applies to contracts made under section 369, Code of 1906; section 3742, Heming-

way's Code. Under both of these sections only express contracts are contemplated, and therefore, no recovery can be had under claim of an implied contract. It, therefore, follows that the appellee cannot recover on a *quantum meruit* basis.

In *Sawmill Co.* v. *Douglas,* 107 Miss. 678, 60 So. 1023, it is said: "The board of supervisors cannot be bound by agreements of this character, even if made by the individual members of the board, because the board can only bind itself by an order entered upon its minutes at a legal session of the board."

In *Gilchrist-Fordney* v. *Keyes, supra,* it is said: "In our judgment, the deed executed by the individual members of the board of supervisors, unsupported by a precedent order entered upon the minutes, is a nullity.

We are not certain that the court in its decree did not permit a recovery on the basis of *quantum meruit,* as sought in the amended bill of complaint. The reason we say this is because in the order of reference the court directed the master to find the value of the services rendered by the contractor, and the master, as directed, made this finding. If the court did allow a recovery on this theory (and we see no other theory upon which it could have been allowed) then it was manifest error.

It has been settled for many years in this state that a county cannot be bound by an implied contract and is not liable in *quantum meruit* where the method prescribed for making a contract is not complied with. This is definitely decided in *Groton* v. *Warren Co., supra; Lamar Co.* v. *Tally & Mayson, supra; Smith Co.* v. *Mangum, supra;* and other cases, *supra.*

We respectfully submit that this case should be reversed and judgment entered for appellant.

*Price & Price,* for appellee.

The contract in this case calls for and makes a part thereof, by special reference and attachment thereto, the

following matters: 1. Notice to contractor; 2. Instructions to bidders; 3. The proposal of the contract; 4. The specifications; 5. The bond contract; 6. The plan for the work; 7. The prices given in the proposal; 8. The requirements of the Highway Commission and the Engineer, and the contract further provides that Mills had entered into a contract with the Highway Commission in full accordance with chapter 176, Laws of 1914, annexed to and made a part of the contract. All nine are recited to be on file in the office of the chancery clerk of Amite county, Mississippi, and with the engineers employed by the commission. 10. Doing all things contemplated by the plans and specifications, which form a part of the contract and shall maintain special work as contemplated by the Highway Commission.

These ten things are said by the contract and contract bond, to be annexed to and made a part of the record and contract, then when this bond and bond contract were recorded they carried with them everything referred to and made a part thereof by operation of law. This ought forever to be an end to the contentions that certain things, to-wit: The order adopting the survey and estimate, as provided in section 5, chapter 176, Laws of 1914, were ordered filed, were filed, and never spread upon the minutes of the board, would vitiate the order of the contract.

In *Marion Co.* v. *Foxworth*, 83 Miss. 677, this court said: ''That orders of the board of supervisors awarding a contract may make such reference to a writing, read and approved by the board and executed in its behalf by its president, as to constitute the writing of a part of the record, although it is not recorded on the minutes of the board.''

Counsel argues that the engineer did not make estimate of the cost of construction and maintenance of each separate mile of the road. We say, that under a proper construction of this record he did. In the first place it is shown by this record that Mills constructed and main-

tained the road from twelve to eighteen months, constantly waiting on the whims, temper and faithless conduct of an engineer and at a fearful and unwarranted expense, and Mills has been given nothing for maintenance, in the court decree.

The total grading required on this road by cross section notes and the four thousand eight hundred eighty-seven cubic yards extra, allowed by Stowell, as claimed by counsel in his brief, and including the two thousand three hundred forty-five cubic yards put up by Ball and Jennings after Mills quit the work, amounted to thirty-three thousand four hundred eighty-five cubic yards. This would leave four thousand six hundred forty cubic yards that evidently Mills put into maintenance and which is far in excess of the maintenance for this item, and no harm or surprise would result to the county.

The contract states that the bid is for a part of the contract. Then, if we refer to and correct the illustration presented in the able brief of counsel on page three, by inserting therein the bid and make the easy calculations provided for and approved by this court in *Marion Co.* v. *Foxworth, supra,* we would have the following quantities for one mile on the McComb road estimated by the engineer on page 112 of the record:

Embankment, 2785 cu. yds. @ 26½¢ per cu.
yd. ................................ $783.02

Clearing and grubbing 1 2/10 acres @
$85.00 per acre .................... 102.00

Moving fence 12 rods @ 25¢ per rod ...... 3.00

Culverts 25'-24" @ 85¢ .................. 21.25

Mining and loading 1636 cu. yds. @ 18¢ .... 294.48

Spreading and machining 1636 cu. yds. @ 18¢ 294.48

Hauling 1636 cu. yds. 1 mile @ 40¢ ........ 654.40

Sub-grading 7360 sq. yds .@ 3½¢ per sq. yd. 257.60

The plans and specifications are made in great detail and are not indefinite but are really precise.

. In *Ellis* v. *Tillman,* 125 Miss. 678, the court was passing upon a case made by agreement of counsel, and the

agreement provided—First, That minutes of the board did not show any engineer's estimates of cost of construction of the road. Not so, here. Second, That the members of the board did not show any order approving any estimate made by the engineers. Not so, here. Third, That the minutes of the board did not show that any contract was entered into between the commission and the contractor for the construction of the road but that no action whatsoever was taken by the board relating to the contract for working that road except the òne single item, and that was that there was an order on the minutes of the board showing that this road had been selected to be worked. But, not so, here. This court, speaking through Justice COOK, said that the commission was without authority to enter into a contract or that the injunction was proper until something more was done. No money had been spent. There were several reasons why that case does not apply here. Amite county has done everything that the Copiah county board had failed to do, and more.

There are different kinds of contracts sometimes entered into by boards of supervisors, where it is beyond the scope of their authority to contract about such subject-matter. There are other classes of contracts, special or implied, where the county acts and thereafter ratifies such contracts by the various methods of ratification, and there is still a third kind of contract wherein the county has authority to contract about such subject-matter and yet, makes a contract that is illegal, and while we contend there was everything done necessary and prerequisite to entering into a contract that it was within the power of the board to contract about and that the contract was perfectly legal in every sense, yet, should there be any doubt on this subject, we call the court's attention to those authorities holding that void municipal contracts, may, under existing conditions, estop the county from setting up such contentions.

The rules of evidence and the rules of law applicable to ordinary contracts are applicable to municipal contracts, and while in neither instance can a contract be varied by parole evidence, yet, in 6 Cyc. 22, it is said: ''Where the construction of the building contract is in doubt, testimony showing the facts existing at the time of the execution of the contract and circumstances of the parties is admissible.''

In 7 R. C. L. 946, Irregular, Defectively Executed and Illegal Contracts,—''It is a general principle of almost universal application that whenever a county has power originally to do a particular thing, it, also, has the power to ratify and make valid an attempted effort to do such thing, although the same may have been done defectively, informally, and even fraudulently, in the first instance.'' Upon the strength of this principle municipal corporations have been estopped from denying their liability to pay for benefits received, in some cases where there was no contract at all, and even in cases where there was an absence of power to make the contract. Where a county receives and retains substantial benefits under a contract which it was authorized to make, but which was void because irregularly executed, it is liable in an action brought to recover the reasonable value of the benefits received. *Hutchinson etc.* v. *Board of Com'rs of Kingman Co.,* 30 Am. St. Rep. 273; 15 L. R. A. 401; 1915-A L. R. A. 989; *Marion Water Co.* v. *Marion,* 121 Iowa, 321, 96 N. W. 883; 1915A L. R. A. 1002; *Natchez* v. *Mallery,* 54 Miss. 499; *Dexter Hitchcock & J. W. Byrnes* v. *Galveston,* 96 U. S. 659; *Mt. Vernon et al.* v. *State of Ohio, ex rel. Berry,* 2 Am. & Eng. Ann. Cas. 399.

If there be a case in the books where the chancellor's findings on the facts should be sustained, we assert with confidence that this is that case.

ETHRIDGE, J., delivered the opinion of the court.

The appellee, Mills, filed a bill in the chancery court against Amite county to recover an amount he claimed

the county was due him under a road construction contract. The county answered, denying the material allegations of the bill. Later Mills filed an amended bill by which he sought to recover from the county on a *quantum meruit* basis for the work done. The material allegations of the amended bill were denied by the county. A decree was rendered against the county in favor of the plaintiff for nine thousand two hundred sixty-four dollars and thirty-three cents from which judgment this appeal is prosecuted.

This cause was on a former day considered and reversed by this court, and judgment rendered for the county, but on suggestion of error being filed the judgment was set aside, the opinion withdrawn, and the cause remanded for argument before the court *in banc* and has been considered by the court *in banc de novo*.

The facts necessary to an understanding of the controversy are as follows: Proceeding under chapter 145, Laws of 1912, as amended by chapter 176, Laws of 1914 (Hemingway's Code, sections 7158 to 7178, inclusive), the county let a contract for the construction of certain public roads in the county, and appellee, Mills, being the lowest and best bidder the contract was awarded to him, and he spend two or three years in the construction of the roads covered by the alleged contract, and received payments from time to time as the work progressed. Later a controversy arose, and Mills contended that the county had breached the contract, and he abandoned the work, and the county had another contractor to perform the work on said public roads. The county contended that Mills breached the contract and, as above stated, let the contract to another man.

The county contended in the court below, and here, that the alleged road construction contract between the county and Mills is void, because, under section 5, chapter 176, Laws of 1914 (section 7162, Hemingway's Code), under which chapter the board of supervisors was proceeding, the engineer failed to make an estimate of the cost of

construction and maintenance of the highways therein
embraced for each mile covered by such survey, and
failed to report such survey and estimate to the road
commissioners as was required by said statute, and that
the making of such estimate and filing thereof with and
the approval by the road commissioners and the board of
supervisors was a mandatory requirement essential to
the validity of the contract.

The following is a copy of the estimate made by the
engineer for one mile of one of the roads embraced, and
is an exact example of the character of survey and esti-
mate of every mile of the roads to be built which the en-
gineer made, and which was approved by the road com-
missioners and by the board of supervisors:

Embankment ..............................2,955 cu. yds.
Clearing and grubbing ...................................2.4 acres
Moving fence .........................................17 rods
Culverts .........................................————
Bridges ............................................ 1-30
Mining and loading...................................1,043 cu. yds.
Spreading and rolling ................................1,043 cu. yds.
Subgrading ........................................4,693 sq. yds.
Hauling ...............................1,043 cu. yds.—2 miles.

The survey so made and the estimate so made by the
engineer do not contain any estimate of the cost of the
work either for each separate mile, or for each separate
link as a whole, but is only an estimate of the work re-
quired to be done.

It is the contention of the county that this estimate is
wholly insufficient, and that the making of the estimate
and the filing and approval by the road commissioners
and board of supervisors is essential to the validity of
the contract under the statute above referred to, and
rely upon *Ellis* v. *Tillman,* 125 Miss. 678, 88 So. 281. In
that case the court considered this statute, and held it
to be mandatory, quoting from the statute at page 685
of 125 Mississippi Reports (88 So. 282) as follows:

"It shall be the duty of such commissioners, subject to the approval of the board of supervisors, to determine and fix what road or roads shall be constructed or constructed and maintained or maintained in such district or districts out of the proceeds of the sale of such bonds and the levy of such taxes; and it shall be their duty to let all contracts for the construction, or for the construction and maintenance or for the maintenance of such roads in the manner now provided by law for the letting of contracts for public work by the board of supervisors; and it shall be their duty to employ a competent engineer to survey and lay out such road or roads in such district or districts, as they shall determine upon, whose duty it shall be to make an estimate of the cost of constructing and maintaining such highway or highways for each separate mile covered by such survey, and report such survey and estimate to said commissioners before contracts are let for the construction or for the construction and maintenance of such highway or highways; which survey and estimate said commissioners shall have the power to adopt or reject and in the latter event to have another made; and when adopted, it shall be their duty to report the same to the board of supervisors, whose duty it shall be to order the clerk of said board to file the same among the records of the office, and spread the same on the minutes of the board and make an order adopting such survey and estimate so reported and adopted by such commissioners; all of which acts of said commissioners to be subject to the ratification or rejection by the board of supervisors."

The statute being mandatory, the failure by the engineer to have the estimate of the cost made and reported to and approved by the road commissioners and the board of supervisors, and spread upon the minutes, as required by the statute, renders the contract void.

It is next contended that, if the contract is void because of such failure to make said estimate and have it approved in the manner required by statute, neverthe-

less the appellee, Mills, should be allowed to recover for the work actually done on a *quantum meruit* basis; that the county having acquiesced in the work being done, and having made partial payments as the work progressed, makes it an implied contract, and the county having used the road so constructed, and having recognized the contract through its board of supervisors by making such payments, cannot now escape liability because of the failure to file the estimates and have them entered upon the records.

In our opinion this contention cannot be maintained, and this case is controlled on that branch of the litigation by *Smith County* v. *Mangum*, 127 Miss. 192, 89 So. 912, and the authorities referred to in that case. This being true, the appellee had no basis for recovery, and the judgment of the court below must be reversed, and judgment rendered here for the appellant.

*Reversed, and judgment here.*

ANDERSON, J., dissenting with opinion.

HOLDEN, J., dissenting orally.

ANDERSON, J. (dissenting). As a member of Division A of this court, I joined in the reversal of this case because I felt impelled to do so on the authority of *Smith County* v. *Mangum*, 127 Miss. 192, 89 So. 913, which case I was not then willing to overrule. After a reconsideration of the case by the court *en banc* on suggestion of error, I have reached the conclusion that the Mangum case is unsound and mischievous, and ought to be overruled.

In my judgment *Crump* v. *Colfax County*, 52 Miss. 107, which has never been expressly overruled, and the Mangum case are squarely in conflict. The Crump case held that a county was liable on an implied contract for the reasonable value of benefits received by it by virtue of a void contract. In that case the contract under con-

sideration was one which the county was authorized to make. The contract was held void because it was not entered into by the county by order entered on the minutes of the board of supervisors.

The subject-matter of the contract involved in the case at bar is one about which counties, under chapter 176, Laws of 1914, are authorized to contract. In other words, if Amite county had pursued the statute in reference thereto, the contract would have been valid. The supreme court of the United States and the courts of last resort of many of the states, have held that, where a county receives and retains substantial benefits under a contract which it was authorized to make but which was void because defectively executed, it is liable on an implied promise for the reasonable value of the benefits received. 7 R. C. L. 946, section 22; 15 C. J. 559, 560, section 256, and cases in notes.

Appellee almost completed his contract, and, according to the judgment of the court below, which is sustained by the evidence, would have done so had he not been illegally prevented by appellant. For more than a year and a half he was engaged in its performance. During that time monthly estimates were rendered by the engineer in charge, and payments made by appellant under the terms of the contract. In fact, in this manner appellant claimed that it had more than paid appellee the contract price. Appellant had in its hands, as retained percentage belonging to the appellee under the contract, about six thousand five hundred dollars. Until appellee brought this suit not a question was ever raised by appellant as to the validity of the contract. After suit was brought appellant then, for the first time, contended that the contract was void and that, therefore, it owed appellee nothing. Under the principles laid down in the majority opinion appellant can not only retain what it agreed to pay appellee, but can sue and recover back from him every dollar paid him under the contract. In other words, appellant has the right to

keep the fruits of appellee's labor and materials; it has the right to keep and use the roads he built, and also the price it agreed to pay him therefor.

I say that good morals and even-handed justice demand that appellant should pay appellee the reasonable value of the benefits received by it.

We should overrule the Mangum case, and go back to the Crump case.

PER CURIAM:—This cause was submitted to Division A on a former day of the present term and the judgment of the court below was reversed. Thereafter, a suggestion of error was filed by counsel for the appellee, and the judgment of reversal was set aside and the case was remanded to the docket for submission to the court *in banc;* and on a later day the judgment of the court below was by the court *in banc* again reversed and the cause dismissed. 102 So. 465. Counsel for the appellee have now filed another suggestion of error, which the court must decline to consider under paragraph 3 of rule 14 (104 Miss. 906) which provides that "'after a suggestion of error has been sustained, or overruled, by the court, no further suggestion of error shall be filed by any party.'" "*Interest reipublicæ ut sit finis litium.*"

*Suggestion of error dismissed.*