MERCHANTS' BANK & TRUST Co. *et al. v.* SCOTT COUNTY.

(Division B. Feb. 13, 1933.)

[145 So. 908. No. 30395.]

Green, Green & Jackson, of Jackson, and Jeff Kent, of Forest, for appellants.

94

96

**J. Knox Huff**, of Forest, for appellee.

Argued orally by **Forrest B. Jackson,** for appellant, and by **J. Knox Huff,** for appellee.

**Ethridge, P. J.,** delivered the opinion of the court.

On the 18th day of February, 1929, the board of supervisors of Scott county, Mississippi, gave the following notice:

"Notice is hereby given that the board of supervisors of Scott county, Mississippi, will receive bids in writing on Monday of the next regular meeting of said board, on one grader for each of districts 3, 4 and 5, one Ford truck for district No. 5, and one caterpillar for district No. 5, No. 20.

"This the 18th day of February, 1929.

"B. R. NICHOLS, Clerk."

On the 6th day of March following, the board entered the following order on its minutes: "It appearing to the board that advertisement has heretofore been duly made in manner and for the time required by law, and that competitive bids have been filed as required by law for the purchase of tractors for road work; the board having investigated the entire matter, including the advertisements and bids, is unanimously of the opinion that the bid of The Munson Road Machinery Company to furnish this county one Cletrac Crawler Tractor, 30 HP, without electric starter, and lights, is the lowest and best bid, and the bid which should be accepted, and that said bid does not exceed advertised prices plus freight; It is thereupon ordered that said bid be and the same is hereby accepted, and the said The Munson Road Machinery Company, is hereby directed to deliver to Scott Beat # 5 County the foregoing described equipment at and for the

sum of two thousand four hundred two dollars and twenty cents, and one used 2 Ton Holt tractor, of which amount the sum of four hundred dollars shall be paid in cash in April, 1929, and the balance shall be paid as follows: two thousand two dollars and twenty cents balance on March 1, 1930, in accordance with the term of Senate Bill No. 58, Extraordinary Legislative Session, 1928."

The proof of publication showed the publication to have been made in a newspaper of the county on February 21 and February 28, 1929, *two* issues only.

Said proof of publication does not appear to have been filed until March 26, 1932, and does not appear to have been filed prior to the 6th day of March, 1929.

Subsequent to the entry of the order by the board on the 6th day of March, 1929, and on or about the 3d day of June, 1929, the Merchants' Bank & Trust Company sent to the board of supervisors an assignment of the latter's contract to pay two thousand two dollars and twenty cents, requesting that such assignment be entered upon the minutes. The deputy clerk in charge of the office entered the same reading as follows: "The board of supervisors hereby accepts notice of an assignment to the Merchants' Bank & Trust Company, of Jackson, Mississippi, of a balance due on this tractor of two thousand two dollars and twenty cents to be allowed as follows: two thousand two dollars and twenty cents to be allowed March 1. 1930, and the clerk is hereby directed and ordered to issue the warrants for said amounts to the said The Merchants' Bank & Trust Company of Jackson, Mississippi, and to deliver said warrants to the latter in accordance with the contract referred to hereinabove."

When the board of supervisors checked the minutes before signing same, this order was read and disapproved, the board not having authorized same, and the clerk was instructed to erase it, which he did by running dollar marks with the typewriter over it, but the lettering was visible nevertheless.

Subsequent to this time, and after the maturity of the alleged two thousand two dollars and twenty cent payment, a claim was presented to the clerk of the board by attorneys for the allowance in favor of the Merchants' Bank & Trust Company of its assignment, which the clerk refused to do, stating that there was some controversy about the matter. The claim was not formally placed on the docket of claims, but the attorneys interviewed the member from the district in which the tractor was situated, and he stated to the attorneys that he could do nothing about the matter until he conferred with his attorneys. There was no entry of an order either rejecting or allowing the claim, and thereupon this suit was brought.

There seems to have been a discrepancy as to the machinery advertised for and that purchased, the advertisement calling for twenty horse power machinery, and that purchased being thirty horse power.

The chancellor dismissed the bill filed by the appellants, and this is an appeal from the order of dismissal.

The statute under which the alleged transaction took place reads as follows: "Boards of supervisors of any county may purchase after legal advertisement, when the total amount of such purchases makes it necessary that such purchase be made upon competitive bids after legal advertisement thereof, trucks, tractors, motor vehicles, and road building machinery, and make a part payment in cash thereon, the balance to be paid in installments, and the deferred payments, above provided for, may be evidenced by an order of the board of supervisors, spread upon the minutes of said board, provided that the maturity of said deferred payments shall not extend beyond March 1st next succeeding such purchases, and in no event, beyond the term of office of the board of supervisors making such order." Chapter 61, section 1, Extraordinary Session 1928.

The contention is whether or not there was a legal advertisement under the terms of this statute, and, whether the order of the board of supervisors, above recited, precluded the inquiry into that matter, and also whether the failure to file the proof of publication before the order was made invalidated it. There is also a question raised as to whether the claim could be allowed because the budget for that year did not contain a provision for such purchase.

But, in view of the conclusion we have reached, it will not be necessary to consider and decide that last question.

We think the provisions of chapter 61, section 1 thereof, Extraordinary Session of 1928, "after legal advertisement" contemplates a *three* weeks' advertisement, and that it refers, by implication, especially to notices required in making contracts for public work. Under sections 239 and 240, Code of 1930, notice is specifically required to be published for *three* weeks. Section 1 of chapter 61, Extraordinary Session of 1928, does not fix specifically what "legal advertisement" means, and does not fix any number of weeks to constitute a legal advertisement.

The general law throughout the statutes requires publication of public notices to be for three weeks, except in a few instances where the statutes fix another length of time. The reference in chapter 61 to publication, "when the total amount of such purchases makes it necessary that such purchase be made upon competitive bids after legal advertisement thereof," refers to the general rule before boards of supervisors to publish notice for three weeks.

We are satisfied that the statute contemplates publication for *three* weeks, and that publication for only two weeks was insufficient. It will be noted from the order set out that the board of supervisors did not undertake to direct advertisement for any specific number of weeks. Generally speaking, the statutes requiring the giving of

notice by publication prior to the act are to be construed, so as to require conformity to statutory directions. State v. Wall, 98 Miss. 521, 54 So. 5; Lay v. Shores, 112 Miss. 140, 72 So. 881; State v. Vice, 71 Miss. 912, 15 So. 129; Board of Sup'rs of Jefferson County v. Arrighi, 54 Miss. 668.

By the terms of section 369, Code of 1906, section 4052, Hemingway's 1927 Code, and section 246, Code of 1930, it is provided, in part, that "all contracts made in violation of any of the provisions of law shall be void."

The purpose of giving public notice for the time required is designed to secure the best bids for the county. The parties contracting with the county are charged with notice of the conditions under which contracts can be made. Amite County v. Mills, 138 Miss. 222, 102 So. 465, 737; Smith County v. Mangum, 127· Miss. 192, 89 So. 913.

In Board of Supervisors v. Ottley, 146 Miss. 118, 112 So. 466, it was held that, in order for boards of supervisors to make contracts, where publication is required, the proof of publication must be filed before the board can act.

It is urged here that the order of the board above recited shows a compliance with the law, and that due notice was published in conformity with law, and that this estops the county from asserting the contrary; that such recitals are conclusive.

We do not think that they are conclusive, nor that the county is estopped by the act of its officers, and that if, in fact, the statutes were not complied with, and compliance is essential to the validity of a contract, the alleged contract is void, and, in fact, no contract. The order does not recite what was done in the way of compliance with the legal requirements, or when the proof of publication was actually made, and there was no making the proof of publication a part of the order by reference, as was done in the case of People's Bank v. Attala County, 156 Miss. 560, 126 So. 192.

The order of the board of supervisors was not a judgment of a court acting in a judicial capacity, the minutes of which imply verity, but was a mere undertaking to certify generally, without reciting the details of what was done in compliance with the law in making a contract. The board of supervisors may have thought, at the time, that it was complying with the law, or that *legal* advertisement was actually made.

There is a marked difference between private contracts between individuals, and contracts where one party is a board representing the public. The legislature has the right to impose restrictions on contracts, and to require parties making contracts with the public to observe the restrictions. If this results in hardships, as in the case at bar, it is a hardship that could have been avoided by observing the statutory requirements.

We find no reversible error in the decree, and it will be affirmed.

Affirmed.